UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CARLTON WALKER,

                          Plaintiff,

        v.                                                   9:17-CV-0650
                                                                    (TJM/DJS)

HON. ANDREW M. CUOMO, *Governor of New York State*, et al.,

                          Defendants.

---

APPEARANCES:

CARLTON WALKER
85-A-1559
Bare Hill Correctional Facility
Caller Box 20
Malone, NY 12953

THOMAS J. McAVOY
Senior United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

Pro se plaintiff Carlton Walker, a New York State inmate, commenced this action on or about June 16, 2017, with the filing complaint, accompanied by an application for leave to proceed in the action in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 2 ("Original IFP Appl."). The Court issued a Decision and Order on July 6, 2017, denying plaintiff's Original IFP Application in accordance with 28 U.S.C. § 1915(g) because plaintiff had acquired three strikes prior to commencing this action and did not allege in his complaint that the imminent danger exception applies. Dkt. No. 4 ("July Order"). Plaintiff thereafter filed

both a notice of appeal of the July Order to the Second Circuit Court of Appeals, Dkt. No. 6, and a motion for reconsideration in this Court of the July Order, Dkt. No. 5. The Court denied plaintiff's motion for reconsideration on August 11, 2017. Dkt. No. 8 ("August Order"). The Court advised plaintiff in the August Order that, if he wished to avoid dismissal of the action, he was required to pay the full filing fee of $400. August Order at 8.

Instead of complying with the August Order, and while plaintiff's appeal of the July Order remained pending before the Second Circuit, plaintiff filed an amended complaint on September 11, 2017, and a motion for preliminary injunction on October 25, 2017. Dkt. Nos. 10, 12.

In response to plaintiff's requests for status updates in this action, Dkt. Nos. 13, 14, the Court issued a text order on December 18, 2017, informing plaintiff that, in light of his appeal of the July Order, "further proceedings in this action . . . must await the determination of his appeal and his compliance with the filing fee requirements for this action." Dkt. No. 15 ("December Text Order"). Plaintiff appealed the December Text Order to the Second Circuit on January 25, 2018. Dkt. No. 19. Plaintiff also submitted a motion seeking a writ of mandamus to the Second Circuit on or about January 19, 2018. *See* Dkt. No. 17.

The Second Circuit thereafter dismissed plaintiff's appeal of the Court's December Text Order, denied plaintiff's mandamus petition, and dismissed plaintiff's appeal of the Court's July Order. Dkt. Nos. 30-32. On September 27, 2018, following receipt of the Second Circuit mandates, this Court issued an Order directing plaintiff to pay the full filing fee of $400 within 30 days or else the case would be dismissed. Dkt. No. 36 ("September Order"). Rather than comply with the September Order, plaintiff filed a motion for injunctive relief, Dkt. No. 38; a second amended complaint, Dkt. No. 39 ("Sec. Am. Compl."); and two

motions for reconsideration of the September Order, Dkt. Nos. 41, 42. The Clerk has forwarded those filings to the Court for review.

## II. MOTIONS FOR RECONSIDERATION

Plaintiff's motions for reconsideration are brought pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which sets forth six grounds upon which relief from a judgment or order may be granted. Fed. R. Civ. P. 60(b). Specifically, a court may relieve a party from a judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason that justifies relief. *Id*. "Rule 60(b) was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Esposito v. N.Y.*, No. 07-CV-11612, 2010 WL 4261396, at *1 (S.D.N.Y. Oct. 25, 2010) (internal quotation marks omitted). Rule 60(b) provides "extraordinary judicial relief" that should be granted "only upon a showing of exceptional circumstances." *Barton v. Troy Annual Conference*, No. 09-CV-0063, 2011 WL 5325623, at *2 (N.D.N.Y. Nov. 3, 2011) (internal quotation marks omitted).

Nevertheless, the law of the case doctrine instructs that when a court rules upon an issue, that decision continues to govern the same issues in subsequent stages of that same case. *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7-8 (2d Cir. 1996). Although a district court retains a certain measure of discretion to revisit its own earlier rulings, that same flexibility does not empower a district court to avoid the clear dictates of an appellate court mandate. *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (citing *United States v.*

*Tenzer*, 213 F.3d 34, 40 (2d Cir. 2000)). Upon receipt of such a mandate, the inferior court to which the matter has been remanded is left with no choice but to proceed in accordance with the mandate as well as "such law of the case as was established by the appellate court." *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 79 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Ben Zvi*, 242 F.3d at 95 ("The mandate rule . . . forecloses relitigation of issues expressly or impliedly decided by the appellate court." (internal quotation marks and emphasis omitted)). Upon review following the issuance of the mandate, the district court retains no discretion to consider questions that have been necessarily determined by the appellate court issuing the mandate. *Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 214 F.R.D. 83, 92 (N.D.N.Y. 2003).

In this case, the September Order directed plaintiff to pay the full filing fee of $400 or face dismissal of this action. September Order at 2-3. Plaintiff's motions for reconsideration ask the Court to find that plaintiff is in imminent danger of serious physical injury pursuant to 28 U.S.C. § 1915(g) and grant him IFP status. *See generally* Dkt. Nos. 41, 42. Accordingly, the motions effectively ask the Court to once again reconsider plaintiff's original IFP application in light of the allegations concerning imminent danger contained in plaintiff's second amended complaint. *See, e.g.,* Dkt. No. 42 at 3 ("[T]he Plaintiff is now seeking reconsideration, because the gist of the Plaintiff's letter is basically asking this Court to exercise the power and authority which this Court has, to review and make a determination on the Second Amended Complaint and its exhibits, so that the plaintiff will be able to obtain a judicial remedy for the imminent danger which he alleges" (internal quotation marks and brackets omitted)). As noted above, the Court denied plaintiff's IFP application in the July

4

Order and denied plaintiff's request for reconsideration of that order in its August Order. Thereafter, the Second Circuit dismissed plaintiff's appeal of the July Order as frivolous. Dkt. No. 32. The Second Circuit's mandate dismissing plaintiff's appeal of this Court's July Order became law of the case, and the Court is therefore precluded from revisiting plaintiff's original IFP application. Mindful of the Court's obligation to extend special solicitude to pro se litigants, however, the Court has construed plaintiff's motions for reconsideration as a new IFP application in light of the second amended complaint.

## III. RENEWED IFP APPLICATION

Because the Court's July Order recited the legal standards governing an inmate-plaintiff's ability to proceed in an action IFP, including what allegations are relevant to the imminent danger inquiry under 28 U.S.C. § 1915(g), the Court will not restate them in this Decision and Order.[1] *See generally* July Order.

The first approximately 40 pages of plaintiff's second amended complaint contain plaintiff's allegations of imminent danger.[2] Some of the allegations describe incidents that pre-date plaintiff's original complaint, which was filed on or about May 14, 2017.[3] Specifically, between 1997 and 1999, while plaintiff was confined in Elmira Correctional Facility, he was assaulted by "predatory offenders." Sec. Am. Compl. at 8-9. Between 2010-

---

[1] Because plaintiff's motions for reconsideration do not challenge the Court's finding in the July Order that plaintiff has acquired three strikes, *id.* at 3-4, the Court has not, and will not, revisit that issue in this Decision and Order.

[2] The second amended complaint reiterates the allegations of imminent danger later in the complaint, where plaintiff asserts the First Cause of Action. Sec. Am. Compl. at 108-10.

[3] Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001). Here, plaintiff signed his complaint on May 14, 2017, *see* Compl. at 31, therefore the Court will presume that plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g) on that date.

5

2016, while plaintiff was incarcerated in Otisville Correctional Facility ("Otisville C.F."), he was sexually and physically assaulted by prison officials. *Id.* at 10-11. Plaintiff also received inadequate medical care in Otisville C.F. until December 12, 2016, "Woodbourn [sic] Facility until mid January 2017," and "[C]ayuga Facility in late January to early February 2017." *Id.* at 21. Lastly, for the first "three or four weeks" of his confinement in Bare Hill C.F.,[4] plaintiff was denied his right to practice his religion. *Id.* at 38-42. Because none of the foregoing allegations are contemporaneous with the commencement of this litigation in May 2017, they do not render the imminent-danger exception contained 28 U.S.C. § 1915(g) applicable. *See Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009) ("[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint–in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed."); *see also Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007); *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d. Cir. 2002).

Other allegations set forth in the second amended complaint related to imminent danger are not tied to any particular date. For example, plaintiff alleges that his prison confinement has generally subjected him to (1) "overcrowded and short-staffed" prison facilities, which create "the risk of violence while decreasing the amount of control prison officials have over the Facilities," Sec. Am. Compl. at 7; (2) prison officials respond to "various violent gangs and violent activities which permeate the prison" with violence, including firing guns from towers and administering tear gas during riots, *id.* at 9; (3) strip-searches whenever he transfers prison facilities or associates with visitors from outside the

---

[4] Plaintiff arrived at Bare Hill C.F. on or about February 24, 2017. Sec. Am. Compl. at 22.

6

prison, *id.* at 12-14; (4) diminished personal privacy and independence, *id.* at 14-15; (5) exposure to illnesses due to community living quarters, *id.* at 15-17; and (6) disgusting bathrooms filled with cigarette smoke and toilet seats covered in cigarette ashes, urine, and feces, which caused plaintiff to develop a rash on his bottom that is being treated by medical staff at Bare Hill C.F., *id.* at 27-28. Even assuming that plaintiff experienced these conditions of his confinement at or about the time he filed his original complaint in this action, none of them create imminent danger to serious physical injury for purposes of 28 U.S.C. § 1915(g) because they describe ordinary (albeit unpleasant) realities of prison confinement. *See Polanco*, 510 F.3d at 155 (affirming the district court's conclusion that the plaintiff's complaint did not satisfy the imminent danger exception where the complaint alleged health risks associated with exposure to mold and unfair discipline); *Word v. Annucci*, No. 09-CV-8983, 2010 WL 2179954, at *2 (S.D.N.Y. May 27, 2010) (concluding that the imminent danger exception did not apply where the complaint failed to include "any allegations of continuous or direct contact with [environmental tobacco smoke], or any concrete allegations of the consequences of such contact"); *Dunaway v. Bd. of Corrs.*, No. 10-CV-4770, 2010 WL 4811892, at *2 (E.D.N.Y. Nov. 19, 2010) (concluding that the imminent danger exception did not apply where the complaint "essentially [alleged] a laundry list of complaints about prison life, *i.e.*, no privacy, cramped living quarters, limited access to phone and library, facility not maintained, and frequent searches of his person and property").

Plaintiff next alleges that, between February 24, 2017, the date on which plaintiff arrived at Bare Hill C.F., and November 8, 2017 (a time period that includes the date plaintiff commenced this action), he was denied adequate medical treatment. Sec. Am. Compl. at

7

22. For the sake of completeness, plaintiff's allegations concerning this approximately nine-month period are as follows:

> 105. Plaintiff got drafted in to Bare Hill Facility February 24, 2017, on only the Prilosec medication for the GERD, and not with standing his many complaint to the Medical Department concerning his symptoms, he was not attended to by any doctor until November 8, 2017.
> 106. Plaintiff repeatedly complained to medical staff at Bare Hill Facility that his medical conditions are getting worst and bothering him a lot, and that he would like to be seen by a doctor.
> 107. Each times the Plaintiff made a request, he was told that there is only one doctor available, and there is a long list of offenders a head of him, and that he would have to wait his turn.
> 108. From immediately after the Plaintiff's arrival at Bare Hill Facility on February 24, 2017, he complained repeatedly to medical staffs about pain in his left foot and sometimes numbness, as a result of injury he sustained during the incidents in Otisville Facility, where he was sexually and physically assaulted.
> 109. Notwithstanding Plaintiff's repeated complaints, he was not seen by any doctor. He was told at one point by medical staff, that the doctor was on vacation, and that it was unknown when he would be returning, thus left the Plaintiff without medical attention in Bare Hill Facility until November 8, 2017.

*Id.* at 22 (all errors in original). Initially, plaintiff's allegation that he was "without medical attention in Bare Hill Facility until November 8, 2017," seems implausible in light of an allegation found later in the second amended complaint explaining that he was seen by a nurse for a blood draw "in late March or early April, 2017." *Id.* at 24-25. In any event, the only physical symptom alleged by plaintiff concerning this time period is "pain in his left foot and sometimes numbness." *Id.* "The term 'serious physical injury,' as utilized in section 1915(g), is nowhere concretely defined, although it has been construed by various courts as including a 'disease that could result in serious harm or even death.'" *Fowlkes v. Loveridge*, No. 08-CV-1198, 2011 WL 4810361, at *4 (N.D.N.Y. Sept. 9, 2011), adopted by 2011 WL

8

4860046 (N.D.N.Y. Oct. 11, 2011) (quoting *Ibrahim v. D.C.*, 463 F.3d 3, 7 (D.C. Cir. 2006)). Even assuming that the remaining allegations are true – that plaintiff was not seen by a doctor for nine months upon arriving at Bare Hill C.F. – generic complaints of pain are not sufficient to satisfy the imminent danger exception under 28 U.S.C. § 1915(g). *See Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) ("The amended complaint made no allegation of ongoing danger, other than conclusory assertions that defendants were trying to kill [the plaintiff] by forcing him to work in extreme conditions despite his blood pressure condition. This type of general assertion is insufficient to invoke the exception to [section] 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury."); *Patterson v. Corrs. Corp. of Am.*, No. 16-CV-0005, 2016 WL 540710, at *3 (M.D. Tenn. Feb. 11, 2018) (finding that the plaintiff's allegations that he was diagnosed with a "broken big toe and that he had continuing severe pain and numbness in his toe as well as continuing leg and back pain adequately alleges facts supporting an inference that the plaintiff is in imminent danger of serious physical injury"). Although the Court is mindful that it "should not make an overly detailed inquiry into whether the allegations qualify for the exception," *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010), the second amended complaint does not describe the physical symptoms plaintiff experienced (aside from "pain in his left foot"), or how the failure to see a doctor until November 8, 2017, rendered him in imminent danger of serious physical injury.

The second amended complaint also alleges that plaintiff qualifies for the imminent danger exception to the three-strikes rule because (1) a nurse at Bare Hill C.F. drew his

9

blood in March or April 2017 "for reason[s] unknown to [plaintiff]," and (2) plaintiff lives in close quarters with individuals at Bare Hill C.F. who snore loudly and pass "offensive smelling gas." Sec. Am. Compl. at 24-27. Although these allegations are contemporaneous with the time that plaintiff commenced this action, they do not describe circumstances that placed him at risk of imminent serious physical injury.

The last of plaintiff's allegations related to imminent danger describe that, between September 2017 and June 2018, plaintiff experienced repeated conflict with Bare Hill C.F. Correctional Officer Senecal, and that, since May 7, 2018, plaintiff has been forced into starvation because he was placed on a special diet that does "not provide enough food for him to have a full stomach at any time." Sec. Am. Compl. at 24-25, 28-37. The second amended complaint also alleges inadequate medical treatment between January and June 2018. *Id.* at 22-23. Courts in this circuit, however, assess the imminent danger inquiry for purposes of 28 U.S.C. § 1915(g) as of the time that the original complaint was filed, not at the time a subsequently amended complaint was filed. *See, e.g., Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) ("Construing [the plaintiff]'s initial and amended complaints to raise the strongest arguments they suggest, we do not conclude that the facts alleged support a finding that he was in imminent danger at the time he filed his initial complaint." (citation omitted)). Accordingly, any allegations concerning the conditions of confinement since May 14, 2017, the date on which plaintiff is deemed to have filed his original complaint, do not satisfy the imminent danger exception.

For the foregoing reasons, the Court concludes that the second amended complaint fails to allege that plaintiff was in imminent danger to serious physical injury at the time he commenced this action and, accordingly, does not qualify for IFP status.

**IV. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motions for reconsideration (Dkt. Nos. 41, 42) are **DENIED** based on law of the case; and it is further

**ORDERED** that, having also construed plaintiff's motions for reconsideration as a renewed IFP application, the application is **DENIED** pursuant to 28 U.S.C. § 1915(g) because plaintiff acquired three strikes prior to commencement of this action and his second amended complaint contains no allegations that render the imminent danger exception applicable; and it is further

**ORDERED** that this action shall be **DISMISSED** unless, within 30 days of the date of this Decision and Order, plaintiff pays the Court's filing fee of $400.00 in full; and it is further

**ORDERED** that, upon plaintiff's compliance with this Decision and Order the Clerk of the Court shall return the file to this Court for review of the second amended complaint in accordance with 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that, if plaintiff fails to timely comply with this Decision and Order, the Clerk of the Court is directed to enter judgment dismissing this action, without prejudice, without further order of this Court; and it is further

**ORDERED** plaintiff's motion for injunctive relief (Dkt. No. 38) is **DENIED without prejudice**. In the event plaintiff pays the full filing fee in accordance with this Decision and

Order, the merits of the motion will be considered upon the file being returned to the Court from the Clerk;[5] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated: November 20, 2018
       Binghamton, New York

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge

---

[5] In the September Order, the Court similarly denied, without prejudice, plaintiff's motion for preliminary inunction (Dkt. No. 12) and informed plaintiff that, upon his payment of the full filing fee in this action, the Court would consider the merits of the motion. September Order at 3.